UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO REYNA, | CASE NO. 1:09-cv-01970-SMS |
| Plaintiff, | |
| v. | ORDER REVERSING AGENCY'S DENIAL OF BENEFITS, DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF, AND REMANDING FOR FURTHER PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

      Plaintiff Pablo Reyna, by his attorneys, Milam Law Office, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record and applicable law, this Court finds that the Administrative Law Judge erred in failing to find that Plaintiff satisfied the requirements of Listing 12.05C and was thus entitled automatically to be determined to be disabled at step two of the ALJ's analysis.

///

///

---

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 8 & 10).

1

I.   **Administrative Record**

  A.   **Procedural History**

  On September 20, 2005, Plaintiff applied for disability benefits pursuant to Title II of the Social Security Act, alleging disability beginning February 20, 2005.  His claims were initially denied on January 3, 2006, and upon reconsideration, on May 17, 2006.  On July 7, 2006, Plaintiff filed a timely request for a hearing.  Plaintiff appeared and testified at a hearing on January 5, 2007.  On May 23, 2007, Administrative Law Judge Christopher Larsen denied Plaintiff's application.

  On April 25, 2008, the Appeals Council remanded, noting that the residual functional capacity was not explained and that the vocational expert evidence was incomplete.  Accordingly, Plaintiff again appeared and testified at a hearing on April 3, 2009.  On June 30, 2009, the ALJ again denied Plaintiff's claim.  On November 6, 2009,  Plaintiff filed a complaint seeking this Court's review.

  B.   **The Agency Record**

  Plaintiff (born August 3, 1962) previously worked as a farm laborer, a kitchen helper, and an industrial cleaner.  When the case commenced, he was drawing a small stipend for providing home health care services to his disabled wife.  (Plaintiff's wife used a wheelchair and required regular kidney dialysis.)  Although able to speak both English and Spanish, Plaintiff was barely able to read and could not write.  An agency interviewer observed that Plaintiff was unable to read and had difficulty responding to her questions.

  Plaintiff was born prematurely.  His parents were farm workers.  He attended special education classes through the eighth grade, when he left school to work as a farm laborer.

  Plaintiff's wife described him as "slow."  She testified that he was unable to return with items on a shopping list and that he was unable to handle money unless he was provided with exact change for the purchase.  Although Plaintiff knew how to drive, he testified that he had never secured a license since he could not read the written examination.  When he took medications, his wife had to help him take the right pill(s) at the right time(s).

///

Plaintiff was fired from his job at a produce dehydrating plant after an argument with a co-worker over Plaintiff's failure to properly clean a machine led to a fight. He was fired from his restaurant job because he was unable to follow directions.

Beginning in or before 2004, Anwar Shaikh, M.D., and Lewis Hernandez, M.D., treated Plaintiff for polycythemia vera, a bone marrow disease in which the body produces too many red blood cells, white blood cells, and platelets. *See* www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001615 (June 3, 2011). Because it causes increased blood thickness and clotting, polycythemia vera results in dizziness, breathing difficulties when lying down, fullness in the upper abdomen, headache, itchiness, red coloring and red skin spots, shortness of breath, symptoms of phlebitis, bluish skin discoloration, fatigue, and vision problems. *Id.* Treatment notes recorded that Plaintiff experienced fatigue, low blood pressure, dizziness, and severe headaches.

Hernandez opined that Plaintiff could stand or walk for two hours, and sit for two hours, in an eight-hour workday. Shaikh opined that Plaintiff was able to stand or walk for one hour, and sit for two hours, in an eight-hour workday.

In October 2005, psychologist Richard Engeln, Ph.D., performed a consultative examination for the agency. Engeln reported that Plaintiff spoke slowly and haltingly, and appeared to experience difficulty focusing his eyes.[2] Engeln administered the WAIS-III and reported that Plaintiff's estimated intelligence scores were 66 verbal; 73 performance; and 66 full scale. His memory scored in the mid-borderline range. The Wide Range Achievement Test R indicated that Plaintiff could read and do arithmetic at the beginning third grade level and could spell at the first grade level. On the WMS-III, Plaintiff scored 53 on immediate auditory memory (moderate range of mental retardation), 64 on delayed auditory memory (mild range of mental retardation), 71 on immediate visual memory (borderline); and 62 on delayed visual memory

---

[2] In the third-party adult disability report, Plaintiff's wife reported that Plaintiff had a "lazy eye." Lazy eye (amblyopia) occurs in children when vision has not developed properly in both eyes. www.webmd.com/eye-health/amblyopia-child-eyes (June 6, 2011). In such children, one eye has much better vision than the other. *Id.* If left untreated, the brain ignores the blurry image from the eye with poor vision, causing the vision in that eye to progressively deteriorate and, in some cases, ultimately to be lost. *Id.*

(mild range of mental retardation).  Plaintiff demonstrated no evidence of mental or emotional illness.  Englin opined that Plaintiff was able to perform jobs with unidimensional instructions and "normal supervision."  He would be able to do the type of farm labor jobs that he had done previously.

As a result, in December 2005, agency physician Evangeline Murillo, M.D., determined that insufficient evidence existed to substantiate that Plaintiff had a mental disorder.  She described Plaintiff as having an academic delay and mild limitations in daily activities, social functioning, concentration, persistence, and pace.  Murillo determined, using the agency's checklist, that Plaintiff had only mild limitations in most areas, but was moderately limited in his ability to understand, to remember, and to carry our detailed instructions.  Murillo categorized Plaintiff's intellectual limitations within mental retardation, but labeled it as "academic delay," outside the regulatory definitions of mental retardation.

Beginning in January 2006, Jacqueline Denkabe, M.D., began treating Plaintiff for left flank pain.  When chest x-rays in March 2006 indicate thickening of Plaintiff's pleura, Denkabe referred him to a pulmonologist and for further diagnostic testing.  Although Plaintiff's lungs were clear of malignant appearing nodules or masses, a CAT scan of Plaintiff's chest showed COPD changes with mild pleural thickening and cardiomegaly.

In May 2006, state agency physician John T. Bonner, M.D., opined that Plaintiff was capable of lifting and carrying 25 pounds frequently and 50 pounds occasionally, and was able to sit, stand, or walk for six hours in an eight-hour workday.

In May 2006, the agency directed questions regarding Plaintiff's "learning disability" to Bonner and agency psychiatrist Archimedes Garcia, M.D.

## II.  Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot,

considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 20, 2005. His severe impairments were borderline intellectual functioning and polycythemia vera. His impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He was unable to perform any past relevant work. Plaintiff had the residual functional ability to perform the full range of sedentary work. The ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision.

**III.    Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  The Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *quoting Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

**IV.     Discussion**

Appealing the Commissioner's denial of disability benefits, Plaintiff raises ten claims.  Because the ALJ's determination that Plaintiff did not satisfy the requirements of Listing 12.05C was clear legal error, the Court need reach only that issue.

**Step Three: Did Plaintiff's impairments meet the requirements of Listing 12.05C?**

Plaintiff contends that, at step three, the ALJ erred in failing to find that his impairment satisfied the requirements of Listing 12.05C.  The Commissioner counters that Plaintiff failed to meet his burden of proving that his impairment began before Plaintiff was twenty-two years old.

The listing provides:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * * * *

///

1    C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
2         other mental impairment imposing an additional and significant work-related
          limitation of function.

3    20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.I, § 12.05.

4    At step three, the ALJ considered whether Plaintiff met the requirements of Listing 12.05
5    (mental retardation) or Listing 17.10 (myelofibrosis) and concluded that Plaintiff met neither.  The
6    ALJ concluded, "The requirements of paragraph C are not met because, although [Plaintiff] does
7    have valid verbal, performance, or full scale IQ of 60 through 70 and a physical impairment
8    imposing an additional and significant work-related limitation of function, the record does not
9    show his deficits in adaptive functioning initially manifested themselves before [Plaintiff] attained
10   age 22. [Plaintiff] testified only that he was in special education and completed the eighth grade."
11   AR20.  Accordingly, the only issue on appeal is whether or not Plaintiff bore his burden of
12   proving the onset of mental retardation before he turned 22.

13   At step three, a claimant has the burden of proving an impairment that meets or equals the
14   listed criteria.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "[T]he regulations only
15   require that a *manifestation* of significantly subaverage intellectual functioning with deficits in
16   adaptive behavior occur prior to 22."  *Michael v. Apfel*, 2000 WL 1006534 at *4 (N.D.Cal. July 7,
17   2000) (No. C-9903936-CRB), *affirmed*, 31 Fed.Appx. 557 (9th Cir. 2002).

18   To satisfy the developmental onset requirement, a claimant need not have been diagnosed
19   as mentally retarded before age 22.  *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987).  *See*
20   *also Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) ; *Maresh v. Barnhart*, 438 F.3d 897,
21   899 (8th Cir. 2006).  "While a claimant *may* use a qualified IQ score before the age of 22 to
22   demonstrate his subaverage intellectual functioning initially manifested during his developmental
23   period, a claimant is by no means *required* to produce an IQ score obtained prior to age 22."  *West*
24   *v. Commissioner, Social Security Admin.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007).  "[T]here are
25   many possible reasons why an adult would not have obtained an IQ test early in life and the
26   absence of an IQ test during the developmental years does not preclude a finding of mental
27   retardation predating age 22."  *Luckey v. United States Dept. of Health & Human Services*, 890
28   F.2d 666, 668 (4th Cir. 1989).  A claimant is not required to produce IQ tests or other

7

contemporary evidence of mental retardation prior to age 22 to establish onset before that age. *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1061 (C.D.Cal. 2010). All that is required is that the record contain some evidence that permits an inference that the impairment existed before age 22 and is not of recent origin due to a traumatic event or other changed circumstance. *Id. See, e.g., Concha v. Astrue*, 2010 WL 2569240 (C.D.Cal. June 21, 2010) (No. CV 09-3044-PJW) (Claimant did not satisfy listing at §12.05C since his intellectual disability was attributable to injuries sustained in a fall while an adult).

      Generally, evidence of participation in special education classes permits an inference of an onset date for mental retardation before age 22. *Gomez*, 695 F.Supp.2d at 1061. Gomez attended special education classes through the eighth grade. *Id.* at 1054. *See also Christner*, 498 F.3d at 793 (circumstantial evidence, including the plaintiff's participation in special education classes and dropping out in an early grade, was sufficient to establish onset of mental retardation before age 22); *Maresh*, 438 F.3d at 900 (mental retardation manifest before age 22 where the claimant attended special education classes, dropped out of school in the ninth grade, had trouble with reading writing and math, and had frequent fights with other children); *Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003) (sufficient evidence that mental retardation had onset before age 22 supported by claimant's attending special education classes through the ninth grade, dropping out in tenth grade, and struggling to obtain GED); *Pedro v. Astrue*, 2011 WL 1100214 (D.Or. March 23, 2011) (CV No. 10-6047-MA) (claimant established onset before age 22 by demonstrating attendance in special education classes); *Campbell v. Astrue*, 2011 WL 444783 (E.D. Cal. February 8, 2011) (No. 1:09-cv-00465-GSA) (evidence of attendance of special education classes, dropping out of school before graduation, and great difficulty with core subjects was sufficient to establish onset of mental retardation before age 22).

      A history of low-level work also constitutes relevant evidence of mental retardation. For example, Gomez's work history included a variety of low-level jobs, working on simple assembly lines and assisting other workers by carrying supplies or doing menial preparatory work. *Gomez*, 695 F.Supp.2d at 1058. He obtained at least four jobs from or through relatives. *Id.* His earnings were minimal. *Id. See also Markle*, 324 F.3d at 189; *Pedro*, 2011 WL 1100214 (Claimant

struggled with simple jobs, having difficulty staying on task and working very slowly in hospital laundry, and finding herself unable to remember customers bread and filling selections as a sandwich maker in a supermarket); *Campbell*, 2011 WL 444783 (Claimant's low yearly earnings indicative of his low-level work history).

Here, Plaintiff attended special education classes, completing the eighth grade. He dropped out in the ninth grade, failing all special education courses except wood shop. After initially working for many years as a farm laborer, he held a series of menial positions including machine cleaner and kitchen helper, in which he experienced difficulties following directions. His earnings have been consistently low throughout his working life. The ALJ erred in concluding that Plaintiff failed to establish onset before the age of 22, and so did not meet the requirements of Listing 12.05C.

### III.    Conclusion and Order

"The court shall have the power to enter, upon pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In social security cases, the decision to remand to the Commissioner to award benefits is within the court's discretion. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (*citation omitted*). Because the Court concludes that the ALJ erred in failing to find the Plaintiff satisfied the requirements of Listing 12.05C, no additional proceedings are necessary.

Accordingly, this Court HEREBY ORDERS that the administrative determination be REVERSED and the case remanded to the Commissioner of Social Security for payment of

///

///

///

///

9

benefits. The Clerk of Court is hereby directed to ENTER JUDGMENT in favor of Plaintiff Pablo Reyna, and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   June 8, 2011**                              /s/ Sandra M. Snyder
                                                                  UNITED STATES MAGISTRATE JUDGE