**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO REYNA, | CASE NO. 1:09-cv-00719-SMS |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION FOR ATTORNEYS' FEES UNDER 28 U.S.C. § 2412 (D) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | (Doc. 22) |

Plaintiff moves the Court to grant attorneys' fees of $13,082.78 under the Equal Access to Justice Act (28 U.S.C. § 2412 (d)) ("EAJA"). The Government objects to Plaintiff's fee request, contending that the requested fees are excessive and noting the duplicative time billed by Plaintiff's two attorneys. Having reviewed the motion and its supporting documentation, as well as the case file, this Court reduces Plaintiff's claim for attorneys' fees to eliminate clerical tasks, duplication of effort, and inflated billing, and orders the payment of fees totaling $7527.63.

**I.     Legal and Factual Background**

Plaintiff applied for disability benefits based on multiple physical ailments and mental retardation. After a prolonged passage through the agency that included an administrative remand to the Administrative Law Judge (ALJ), the Commissioner denied Plaintiff's application for disability benefits.

On November 6, 2009, Plaintiff appealed the Commissioner's decision to this Court. On June 9, 2011, the Court concluded that the ALJ made a legal error in determining that Plaintiff's

mental retardation did not manifest itself before Plaintiff was 22 years old. As a result, the Court reversed the Commissioner's decision and remanded for payment of benefits.

On September 6, 2011, Plaintiff filed a motion for attorneys' fees under the EAJA totaling $11,108.17. On October 20, 2011, Plaintiff filed his reply brief as well as the supplementary declaration of Mr. Wilborn, seeking to add eleven additional hours ($1974.61) to the billing for time spent preparing the reply brief and certification for the motion. Thus, Plaintiff's total EAJA fee request totals $13,082.78.

## II. Attorneys' Fees Under the EAJA

28 U.S.C. § 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A prevailing party under the EAJA is one who has gained by judgment or consent decree a material alteration of the legal relationship of the parties. *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002).

Under the EAJA, attorneys' fees must be reasonable. 28 U.S.C. § 2412(d)(1)(A); *Perez-Arellano,* 279 F.3d at 794. The amount of the fee must be determined based on the case's particular facts. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).[1] The Court determines the fee based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, and must provide a concise and clear explanation of the reasons for its determination. *Id.* at 433, 437; *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). A court has wide latitude in determining the number of hours reasonably expended and may reduce the hours if the time claimed is excessive, redundant, or otherwise unnecessary. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035 (1990). The court has the

---

[1] *Abrogated on other grounds by Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782 (1989)*; Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 518 (9th Cir. 2000).

obligation to exclude from the calculation any hours that were not reasonably expended on the litigation. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (*internal quotations omitted*).

Plaintiff requests attorneys' fees totaling $13,082.78, attributable to 74.45 attorney hours bill for prosecuting Plaintiff's appeal. Of the claimed hours, 14.7 are attributable to Ms. Bosavanh; 59.75 to Mr. Wilborn. The Government objects to Plaintiff's fee request, arguing that the amount requested is unreasonable and noting unnecessary duplication of effort by the two attorneys and Ms. Bosavanh's inflated billing for reviewing documents. On its own motion, the Court notes inappropriate billing of activities more properly delegated to clerical or paraprofessional staff.

### A. Ms. Bosavanh's Time

#### 1. Clerical and Paraprofessional Work

Attorneys and paralegals may not legitimately bill for clerical or secretarial work. *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989). "'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by nonlawyers but which a lawyer may do if he has no other help available.'" *Id.*, quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). "[T]he court should disallow not only hours spent of tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553 (*internal quotations omitted*). Clerical work may not be billed since it is part of a law firm's overhead. *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325-26 (5th Cir. 1980). *Cf., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing paralegal bills to account for erroneous billing of clerical work performed by paralegal).

First, the Court finds that nearly all of the 1.3 hours billed on November 6, 2009, to prepare, review, and electronically file the complaint, IFP,[2] and related documents was work

---

[2] The November 6, 2009 review of the motion to proceed *in forma pauperis* is listed twice on Mrs. Bosavanh's time summary.

3

reasonably to be performed by an experienced legal secretary. While the Court acknowledges that Ms. Bosavanh likely would review these documents before their filing with the Court, all of the listed documents are boilerplate forms to be completed by the word processor inserting relevant information, an appropriate clerical task. Similarly, clerical staff would likely perform the actual filing of the documents. The Court reduces this line item to .2 hours, sufficient time to review these brief documents before returning them to staff for filing.[3]

Second, Ms. Bosavanh billed one hour on November 16, 2009, to prepare documents and serve three government defendants; electronically file the proof of service; and to prepare the consent to a magistrate judge. Even though Ms. Bosavanh may deem it necessary to perform a final review of her staff's work and bill accordingly, the tasks themselves are secretarial or paralegal work. The Court reduces this item to .1 hours.

In addition, the Court notes that the extreme lack of detail of the Ms. Bosavanh's time statements makes it impossible for the Court to analyze the nature of the repeated entries of "teleconference with client." Such nebulous entries provide no clue whether the purpose of the telephone call reasonably required it to be handled by an attorney or whether the purpose was one that could appropriately and economically have been handled by other staff, for example, a reminder to return documents. The judges of this Court have repeatedly instructed Ms. Bosavanh to provide time records that are sufficiently detailed to allow evaluation of each entry's propriety. She has not complied. The Court reduces the time attributable to the telephone calls by one-half, that is by 1.0 hours.

Similarly, Ms. Bosavanh's vague October 16, 2009 entry, "Draft and review documents to mail to client," provides no clue that this entry refers to anything other than compiling and mailing standard materials, such as a retainer agreement, questionnaires, or informative or educational materials, that would typically be dispatched to a new client at this point in a social security appeal. Such correspondence is properly treated as overhead, billable neither to a client or to an adversary in a fee application. In the absence of sufficient detail to identify the nature of

---

[3] The Court does not know whether or not Ms. Bosavanh employs staff to assist her in her law practice. It does not matter. An attorney may not bill attorneys' fees for performing clerical work.

4

the correspondence, this entry is disallowed.

///

### 2. Reviewing of Documents

The Commissioner criticizes Ms. Bosavanh's billing of a minimum of .1 hour each time she reviews a document or item of correspondence, no matter how perfunctory the review. For example, confirming that a document has been posted on the Court's docket, checking a return receipt for certified mail, or confirming that the Court has granted the client permission to proceed *in forma pauperis* requires no more than a glance. The cumulative effect of the many individual entries greatly inflates the billed time. In this case, the entries include:

| Date | Description | Hours |
|---|---|---|
| 11/06/09 | Receive and review court docket entry | .1 |
| 11/09/09 | Review court documents | .2 |
| 11/09/09 | Receive and review court order granting motion to proceed IFP | .1 |
| 11/09/09 | Receive and review order granting IFP motion, summons, scheduling order, and related documents | .4 |
| 12/02/09 | Review return receipt from US Attorney and Attorney General | .1 |
| 12/15/09 | Review return receipt from Commissioner | .1 |
| 1/14/10 | Review consent to U.S. Magistrate by OGC | .1 |
| 2/09/10 | Review court notice re: designation of counsel for service | .1 |
| 3/16/10 | Receive and review notice of lodging of transcript | .1 |
| 4/22/10 | Review document for mailing to client | .1 |
| 7/08/10 | Receive and review court docket re: stipulation and proposed order for extension of time requested by OGC | .1 |
| 7/08/10 | Receive and review court order signed by judge re: extension of time | .1 |
| 8/12/10 | Receive and review court docket re: stipulation and proposed order for extension of time requested by OGC | .1 |
| 8/12/10 | Receive and review court order signed by judge re: extension of time | .1 |
| 10/21/10 | Review documents to mail to client | .1 |
| 6/10/11 | Review documents to mail to client | .1 |

The lack of detail in each entry raises further questions regarding the nature of the work performed. The Court reduces the time billed for review from 1.9 hours to .5 hours.

### 3. Duplicative Time

Counsel fees should not include excessive, redundant, or otherwise unnecessary time such as that attributable to the supervision or correction of a junior attorney. *See Hensley*, 461 U.S. at 434. An attorney submitting a fee request should exercise the same billing judgment that he or

she would use in preparing a bill for submission to the client, omitting ill-used or unnecessary time. *Id.*

In this case, Ms. Bosavanh delegated the process of researching and writing Plaintiff's confidential letter and subsequent briefs to Mr. Wilborn.  As a result, even though she has the professional responsibility to review Mr. Wilborn's work before signing the prepared briefs, she may not bill for time that duplicates Mr. Wilborn's activities in preparing these documents. Ms. Bosavanh has previously been advised that this duplicative work is not compensible under the EAJA.  *See Fontana v. Astrue*, 2011 WL 2946179 (E.D.Cal. July 21, 20011) (No. 1:10-cv-0932-DLB); *Stairs v. Astrue*, 2011 WL 2946177 (E.D. Cal. July 21, 2011) (No. 1:10-cv-0132-DLB); *VonBerckefeldt v. Astrue*, 2011 WL 2746290 (E.D. Cal. July 14, 2011) (No. 1:09-cv-01927-DLB); *Roberts v. Astrue*, 2011 WL 2746715 (E.D. Cal. July 13, 2011) (No. 1:09-cv-01581-DLB). Accordingly, the Court disallows 1.2 hours billed for Ms. Bosavanh to receive and check transcript contents (March 16, 2010) and .5 hours billed for Ms. Bosavanh to review the Commissioner's brief (August 19, 2010) since Mr. Wilborn needed to review those documents in preparation for writing Plaintiff's briefs.

### 4.     **Preparation of Fee Request**

On September 4, 2011, Ms. Bosavanh billed 1.5 hours to "[p]repare EAJA fee time documents and proposal."  This perfunctory entry provides little insight into the activities performed to support the claim.  An attorney's time records are properly compiled contemporaneously with their performance.  Since an attorney cannot charge his client for overhead, such as maintaining time records, time spent accumulating time records is not compensible. *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) ("Hours that are nor properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority").

While an attorney's review of time records to eliminate duplicative or excess billing, and to eliminate any language that would compromise attorney-client confidentiality is appropriately compensible, there is little evidence that Ms. Bosavanh conducted such an exercise, particularly in light of the almost total lack of detail in the billing summary and the nearly identical time

6

records submitted in her many EAJA claims with this Court. Ms. Bosavanh continues, in case after case, to include the same entries that have been disallowed in prior cases. And she continues to resist court direction to more fully detail the billing entries to permit the Court and her adversary to accurately evaluate her time claims.

Finally, just as was the case for the documents initiating this action, other than the time records themselves, the other documents comprising the EAJA fee proposal consisted of word processed documents capable of being competently prepared by a legal secretary with Ms. Bosavanh's supervision.

The Court reduces the time allocated to preparation of the EAJA proposal and time records to one hour.

### 5. Fees Payable to Ms. Bosavanh

Although this Court has reduced time claimed for review of the documentation relating to the parties' agreement to extend time for the Commissioner's briefing, it will allow in full the .1 hour billed for Ms. Bosavanh's determination to agree to the Commissioner's request for an extension. The Court also allows the 2.2 hours billed for Ms. Bosavanh's review of the briefs prepared by Mr. Wilborn.

The Court grants Ms. Bosavanh attorneys' fees for 6.3 hours of work, allocated 2.5 hours, 2009 ( initial analysis,10/1; e-mail to Wilborn, 10/16); 2.8 hours, 2010 (document review; extension, 7/8; and review of Mr. Wilborn's work product); and 1.0 hour, EAJA application, 2011, representing fees of $430.60, 2009; $490.00, 2010; and $179.51, 2011. Total fees allocated to Ms. Bosavanh are $1100.11.

### B. Mr. Wilborn's Time

#### 1. Preparation of Confidential Letter Brief and Opening Brief

Mr. Wilborn billed 22.75 hours for his preparation of Plaintiff's confidential letter brief (8.25 hours) and opening brief (14.5 hours). The opening brief being the linchpin of a social security appeal, 23 hours is not excessive *per se*. But when an attorney who represents himself to be a former administrative judge for the Social Security Administration and the author of a Social Security treatise spends approximately three working days preparing these briefs, the expected

result is a concise and focused brief[4] that clearly provides the information necessary to enable a court to make a decision favorable to the claimant.  The opening brief in this case did not meet these expectations.  Instead, the brief consisted of a confused laundry list of ten claims with little legal expertise applied to identify and winnow the weak arguments, to emphasize the strong ones, to separate the material facts from the mass of the agency record, or to discuss relevant precedent in detail.  *See, e.g.*, Helene S. Shapo, Marilyn R. Walter, and Elizabeth Fajans, *Writing and Analysis in the Law* at 396 (Thomson/Foundation Press 2008).  *See also* Antonin Scalia and Bryan A, Gardner, *Making Your Case* at 22-23 (Thomson/West 2008) ("Scattershot argument is ineffective.  It give the impression of weakness and desperation, and it insults the intelligence of the court.").  Plaintiff's brief misrepresented the hearing decision and never addressed the legal criteria for a claimant's establishing the onset of mental retardation before age 22.

      Mr. Wilborn concluded that the ALJ "failed to articulate any basis for finding that Plaintiff's impairments were not 'equal' to a listed impairment." Doc. 13 at 9.  In fact, the ALJ carefully set forth his reasoning in concluding that Plaintiff did not meet the requirements of listing 12.05:

> I considered Mr. Reyna's mental impairment under listing 12.05.  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied.
>
> * * * * *
>
> The requirements in paragraph C are not met because, although [Plaintiff] does have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical impairment imposing an additional and significant work-related limitation of function, the record does not show his deficits in adaptive functioning initially manifested themselves before Mr. Reyna attained age 22.  Mr. Reyna testified only that he was in special education and completed the eighth grade.

Doc. 12-3 at 21.

///

---

[4] Note that Mr. Wilborn suggests that reasonable attorneys' fees could be estimated by determining the typical number of hours needed to write one page, then multiplying by the number of pages in the brief.

8

The Court reads this portion of the hearing decision at presenting a clear legal question: If a claimant demonstrates that he attended special education classes and left school in the ninth grade, has he established onset before age 22? Having carelessly read the hearing decision, Wilborn provided the Court with no legal precedent addressing the nature of proofs required to prove the onset of mental retardation before age 22. When the Court itself investigated the legal requirements for a plaintiff's proving onset before age 22, it quickly found clear precedent that Plaintiff had proved onset before age 22 and prepared a brief (ten-page) opinion finding that the ALJ erred at step 3 of the disability analysis and that Plaintiff had demonstrated satisfaction of the listing requirements. The extended and cumbersome analysis of the opening brief was unnecessary and wasted the time of the Court and both parties.

The opening brief argued that Plaintiff had proved his disability based not on legal precedent, but on the criteria for a psychological diagnosis pursuant to the *Diagnostic and Statistical Manual*. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 43 (4th ed., Text Revision 2000). Thus, while Plaintiff re-emphasized the factual evidence that he contended proved timely onset of his intellectual disability, he provided no basis whatsoever for the Court to conclude that the ALJ had wrongly rejected that evidence in determining whether Plaintiff established legally cognizable onset before age 22. Instead, the opening brief argued that (1) the ALJ somehow added unjustified requirements to the listing, as the ALJ did in evaluating the claimant's arthritis in *Pitzer v. Sullivan*, 908 F.2d 502, 505-06 (9th Cir. 1990), and that (2) Plaintiff's combined impairments are so severe as to functionally, rather than literally, satisfy the requirements of Listing 12.05. This analysis, set forth in claims B and C, was not helpful.

Having concluded that the appeal could be resolved at step three, the Court did not consider Plaintiff's remaining eight claims, which alleged that (A) the ALJ erred in referring to Plaintiff's disability as borderline intellectual functioning rather than mental retardation; (D) the ALJ failed to comply with rules and regulations governing evaluation of mental impairments; (E) the ALJ's finding that Plaintiff had limited education was not supported by substantial evidence; (F) the vocational expert testimony did not constitute substantial evidence due to the ALJ's

omission of certain limitations; (G) the ALJ improperly rejected the testimony of Dr. Shaikha and Dr. Hernandez; (H) the ALJ improperly rejected Plaintiff's allegations; (I) the ALJ failed to address the lay testimony; and (J) the proper disposition of the case is a remand for payment of benefits.

In determining an award of attorneys' fees, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. In *Hensley*, the Court sought "to clarify the proper relationship of the results obtained to an award of attorney's fees." *Id.* at 432. If the plaintiff has obtained excellent results, his or her attorney ordinarily should receive the full compensatory fee, consisting of all hours reasonably expended on the litigation. *Id.* at 435. But if the plaintiff has achieved only partial or limited success, compensation for the full amount of the attorney's time may be excessive even if the attorney presented claims that were nonfrivolous and raised in good faith. *Id.* at 436. "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion or skill." *Id.*

Assessing fees claimed in a complex civil rights case in which the plaintiffs prevailed on only some of their claims, the *Hensley* Court recognized that despite the number of attorney hours involved in prosecuting such a case, the fact that the plaintiff prevailed may not be conclusive on the award of attorney fees. *Id.* Where an award of the requested fees would clearly be excessive, "nor precise rule or formula exists" to determine the appropriate award of attorneys' fees. *Id.* A district court may elect either to identify specific time that must be eliminated or simply reduce the fee award as a whole to address the limited success. *Id.* The decision of how to proceed is entrusted to the district court's discretion. *Id.* The Court has the responsibility to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" to ensure that the fee award is reasonable. *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990).

> A district court's assessment of the "degree of success" achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims . . . . Both "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidence in her complaint, are key factors in determining the degree of success achieved . . . . Indeed, this comparison "promotes the court's

'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'"

*Adorno v. Port Authority of New York and New Jersey*, 685 F.Supp.2d 507, 513 (S.D. N.Y. 2010), *quoting Barfield v. New York Health & Hosp. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008).

Substantial portions of time, such as that required to initially review the agency record, must be allocated in any case. Unfortunately, the Court is unable to identify specific time to be eliminated since the block-billing format that Mr. Wilborn uses does not identify the specific time spent on any discrete element of the briefs' preparation. *See Hensley*, 461 U.S. at 437 ("The applicant . . . . should maintain billing records in a manner that will enable a reviewing court to identify distinct claims"). As a result, the Court's only alternative is to reduce the fee award as a whole to a reasonable allowance. The Court will allow sixteen hours for preparation of the confidential and opening briefs.

### 2.  Preparation of Reply Brief

Mr. Wilborn billed 24.5 hours to preparation of the reply brief. He attributed the remarkable time spent on the reply brief to his efforts to discover and exploit legal and factual errors in the Commissioner's brief. He apparently found a good number since, at 37 pages, Plaintiff's reply brief is two-and-a-half times the length of the Commissioner's brief. While the Court appreciates the importance of replying to the Commissioner's brief, the reply brief is overlong and the amount of time spent preparing it is clearly excessive and unreasonable. The Court will allow twelve hours for preparation of the reply brief.

### 3.  Preparation of EAJA Fee Application

Plaintiff requests fees for 1.5 hours for Mr. Wilborn's preparation of the EAJA application, memorandum, and supporting documents, including Mr. Wilborn's declaration of his time and qualifications. He also requests eleven hours of fees for the fourteen hours Mr. Wilborn spent preparing the reply brief and supplemental declaration. Reasonable time spent in preparing an EAJA fee motion is compensable. *Atkins v. Apfel*, 154 F.3d 986, 989 (9th Cir. 1998). The 1.5 hours requested for Mr. Wilborn's initial preparation of the supporting brief and his own declaration is reasonable and will be granted. Mr. Wilborn's request for eleven hours of

time for preparing Plaintiff's 25-page reply memorandum and a seven-page declaration further justifying the time billed in this "complex" social security case is clear overreaching, however.

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Once Plaintiff has presented his fee request and the Commissioner has had an opportunity to set forth his objections to the requested fees, the Court is generally able to review the record without further briefing. In the absence of some unexpected or unsupportable argument in the Commissioner's brief, extensive further briefing and argument is unnecessary and inappropriately billed.

Plaintiff's reply brief in this matter epitomizes such unnecessary briefing in that it both restates arguments made in the initial motion brief and overanalyzes the fees awarded in other EAJA motions. "The amount of the fee . . . . must be determined on the facts of each case." *Hensley*, 461 U.S. at 429.

Earlier this year, Judge Beck noted the "growing animosity between the parties." *Belcher v. Astrue* (1:09-cv-1234-DLB), Doc. 41 at 5. In the reply brief in this motion, Mr. Wilborn's anger at the Commissioner's opposition to his fee requests has blossomed in unprofessional *ad hominem* attacks. Among other things, the reply brief accuses the Commissioner of "bad faith harassment" (Doc. 26 at 4) and of "unabated" litigation against Bosavanh's and Wilborn's fee requests (Doc. 26 at 10).

Mr. Wilborn's unbridled expression of animosity continues in his October 18, 2011 "declaration," in which he accuses the Commissioner of "nitpicking" and bad faith, and Judge Beck's award in *Stairs* (2011 WL 2946177 (E.D. Cal. July 21, 2011) (No. 1:10-cv-0132-DLB)) of "being out of the mainstream." The "declaration" is an inappropriate and mean-spirited diatribe which this Court will not countenance. "A declaration . . . . must contain only facts of which the declarant has personal knowledge; legal argument and case citations are improper in a declaration." *McCoy v. Evans*, 2011 WL 3878374 at *13 (N.D. Cal. September 1, 2011) (No. C-09-4768 SI (pr)). While an attorney might appropriately include additional factual information within a declaration of services rendered in order to explain a particular departure from the time

///

that might reasonably be expected for a particular task, Mr. Wilborn's self-serving tirade, which includes multiple derogatory attacks on the Commissioner, has no place in this Court.

As the attorney of record in this action, Ms. Bosavanh shares in this misconduct through her failure to review the reply documentation submitted in the EAJA motion and revise or remove the declaration. The Court will order no compensation for the preparation of the declaration. In addition, Mr. Wilborn and Ms. Bosavanh are hereby warned that including a similar document in a future case will subject to both attorneys to sanctions.

While a limited and succinct reply brief may have been desirable, the overlong and mean spirited reply brief submitted in this case was unnecessary and the fees claimed for it are unreasonable. Since Mr. Wilborn's time summary precludes the Court's linking specific times with specific tasks, the Court must again allocate time by reducing the amount claimed as a whole. In addition to the 1.5 hours allowed for preparation of the initial EAJA fee application, the Court will allow seven hours, which is one-half of the time claimed to have been spent on the reply brief and accompanying documents.

### 4.   Calculation of Fee Award

The Court grants Mr. Wilborn attorneys' fees for 36.5 hours of work, allocated 28 hours, 2010, and 8.5 hours, 2011, representing fees of $4901.68, 2010; and $1525.84, 2011. Total fees allocated to Mr. Wilborn are $6427.52.

### III.   Payment of Fees Directly to Attorney

Attorneys' fees payable under the EAJA (28 U.S.C. § 2412(d)) are appropriately payable to the prevailing litigant, not his or her attorney. *Astrue v. Ratliff*, 130 S.Ct. 2521, 2524 (2010). This is because that a fee award under the EAJA is subject to offset for application to federal debts owed by the prevailing party under the Treasury Offset Program (31 U.S.C. § 3716). *Id.* When the party has assigned his or her right to attorneys' fees to his or her attorney, the government may ultimately direct the payment to the assignee if the prevailing party does not owe a debt to the government. *Id.* at 2529. In this case, however, Plaintiff does not claim to have exercised an assignment in favor of his attorneys.

///

## IV.     Conclusion and Order

In accordance with the foregoing, this Court AWARDS to Plaintiff attorneys' fees under the EAJA of $7527.63, allocated $1100.11 to Ms. Bosavanh and $6427.52 to Mr. Wilborn.  This amount is payable to Plaintiff in compliance with *Ratliff*, 130 S.Ct. at 2524.

IT IS SO ORDERED.

**Dated:     December 6, 2011**                                 /s/ Sandra M. Snyder
                                                                 UNITED STATES MAGISTRATE JUDGE